**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

IAN BLUMBERG
3401 Midfield Road
Pikesville, Maryland 21208
Baltimore County,

      Plaintiff,

v.

UNIVERSITY SYSTEM OF MARYLAND,
701 E. Pratt Street
Baltimore, Maryland 21202
Baltimore City

**SERVE:**
Office of the Attorney General
Civil Litigation Division
200 St. Paul Place
Baltimore, Maryland 21202
civil_service@oag.state.md.us,


UNIVERSITY OF MARYLAND
AT COLLEGE PARK,
1101 Main Administration Bldg.
7901 Regents Drive
College Park, Maryland 20742-5025
Prince George's County

**SERVE:**
Office of the Attorney General
Civil Litigation Division
200 St. Paul Place
Baltimore, Maryland 21202
civil_service@oag.state.md.us,


OFFICE OF STUDENT CONDUCT,
UNIVERSITY OF MARYLAND
AT COLLEGE PARK,
2130 Mitchell Building
College Park, Maryland 20742

Case No. _____

Prince George's County

**SERVE:**
Office of the Attorney General
Civil Litigation Division
200 St. Paul Place
Baltimore, Maryland 21202
civil_service@oag.state.md.us,

JENNIFER VALDEZ, *in her individual and official capacities*
2130 Mitchell Building
College Park, Maryland 20742
Prince George's County

**SERVE:**
Office of the Attorney General
Civil Litigation Division
200 St. Paul Place
Baltimore, Maryland 21202
civil_service@oag.state.md.us,

and

JUNYAN ZHAO, *in his individual and official capacities*,
2323 Kirwan Hall
College Park, Maryland 20742
Prince George's County

**SERVE:**
Office of the Attorney General
Civil Litigation Division
200 St. Paul Place
Baltimore, Maryland 21202
civil_service@oag.state.md.us,

Defendants.

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF
## (TEMPORARY RESTRAINING ORDER REQUESTED)

Plaintiff Ian Blumberg ("Plaintiff" or "Mr. Blumberg"), by and through his undersigned counsel, for his Complaint against the University System of Maryland (the "University"), University of Maryland at College Park ("UMD"), Office of Student Conduct, University of Maryland at College Park ("OSC"), Jennifer Valdez ("Valdez"), and Junyan Zhao ("Zhao") (collectively, "Defendants"), for violations of his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, 42 U.S.C. § 1983 for discrimination on the basis of religion and for retaliation, and the Fourteenth Amendment to the United States Constitution respectfully shows this Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Ian Blumberg is a resident of Baltimore County, Maryland, and at all relevant times was an undergraduate student at UMD pursuing a bachelor's degree in computer science within the A. James Clark School of Engineering. Mr. Blumberg is diagnosed with, and has a well-documented history of, disabilities including Attention-Deficit/Hyperactivity Disorder, dysgraphia, and anxiety. Mr. Blumberg is registered with UMD's accessibility and Disability Services ("ADS") unit to receive various academic accommodations. Mr. Blumberg is also an observant Jewish person who observes the religious holidays and the practices of Judaism.

2.      Defendant University System of Maryland is a public higher-education system established by Maryland law and receives federal financial assistance.

3.      Defendant University of Maryland at College Park is the University's flagship educational institution and, through its officials and academic units, carries out all the acts described in this Complaint.

4.      Defendant Office of Student Conduct is an administrative unit of UMD and is responsible for, *inter alia*, implementing and enforcing the school's Code of Academic Integrity ("CAI").

5.      Defendant Jennifer Valdez is the Coordinator for Student Conduct within the OSC. She is named as a Defendant in this action in both her individual and official capacities.

6.      Defendant Junyan Zhao is a postdoctoral student from Shanghai, China at UMD. He is named as a Defendant in this action in both his individual and official capacities.

7.      At all relevant times, each Defendant, and all Defendants collectively, acted under the color of state law and within the scope of his or her employment and/or agency with UMD.

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1343 because this action arises under federal statutes protecting civil rights.

9.      This Court has supplemental jurisdiction over related state law claims, if applicable, under 28 U.S.C. § 1367 because those claims arise from the same set of common facts as the ones described herein.

10.      Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred at UMD which is in Prince George's County, Maryland.

## FACTS

### Mr. Blumberg's Student Career and Previous Issues with Defendants

11.      Mr. Blumberg was formally diagnosed with AD/HD and dysgraphia in 2011.

12.    Since at least 2011, Mr. Blumberg has obtained extensive, formal documentation of his various medical diagnoses.

13.    Mr. Blumberg began his undergraduate studies at UMD in Fall of 2021. Throughout his undergraduate career, Mr. Blumberg demonstrated academic excellence as evidenced by him earning a spot on UMD's Dean's List. Mr. Blumberg has no previous record of any student discipline with OSC at UMD.

14.    In addition to being a high-achieving student, Mr. Blumberg demonstrates an entrepreneurial and motivational spirit as evidenced by him starting his own business and working at the Carnegie Mellon University CREATE Lab as a Community Software and Data Intern.

15.    Despite Mr. Blumberg's varying academic accomplishments, though, throughout his time at UMD, Mr. Blumberg has experienced several issues with UMD's ADS Testing Office.

16.    For example, in December 2022, Mr. Blumberg experienced significant noise disruptions during his computer science examination at the ADS testing location, resultiung in only five extra minutes granted instead of the thirty (30) minutes lost. *See* email correspondence attached hereto as **Exhibit A**.

17.    In September 2023, Mr. Blumberg was denied full extended time for his CMSC250 exam due to administrative errors at the ADS center. *See* email correspondence attached hereto as **Exhibit B**.

18.    In March 2024, Mr. Blumberg reported another incident during his ENEE250 exam wherein he was only granted an extra three (3) minutes of testing time despite a

significant disruption lasting for approximately thirty (30) minutes during the exam. *See* email correspondence attached hereto as **Exhibit C**.

19.     Throughout the semester, as with previous semesters, Mr. Blumberg utilized ADS testing accommodations, which include extended time, a distraction-reduced environment, and ability to use additional blank paper to record his work for his dysgraphia.

20.     As demonstrated above, on numerous occasions, however, ADS failed to properly accommodate Mr. Blumberg.

### Mr. Blumberg Suffers Anti-Semitism

21.     Mr. Blumberg is observant of the Jewish holidays, is an active member of the University of Maryland Hillel, and despite verbal requests has been required to complete work during Jewish holidays.

22.     Defendants are aware that Mr. Blumberg is a religious Jewish person. None of the other Defendants are Jewish.

23.     Since October 7, 2023, UMD has experienced a significant and marked uptick in antisemitic rhetoric lodged against Jewish students.

24.     In fact, the Anti-Defamation League even rates the "Campus Conduct and Climate Concerns" at UMD around Judaism as "red."

25.     Additionally, UMD's student government just recently passed a divestment referendum, that does nothing more than normalize hatred of Israel and targeting Jewish students and organizations.

**Unsubstantiated Academic Misconduct Allegations and Discrimination Campaign**

26.     In Spring of 2025, Mr. Blumberg was enrolled in, *inter alia*, CMSC351 and MATH401.

27.     At all relevant times, Defendant Zhao was Mr. Blumberg's MATH401 professor. Defendant Zhao is a Novikov Postdoctoral student at UMD.

28.     Unbeknownst to Mr. Blumberg, Defendant Zhao harbored an animus towards Mr. Blumberg throughout the Spring 2025 semester. Upon information and belief, Defendant Zhao found Mr. Blumberg to be disruptive and a poor student. The first time that Mr. Blumberg learned about Defendant Zhao's bias towards him was on April 9, 2025.

29.     Defendant Zhao brought his animus against Mr. Blumberg to full force when in March 2025, Mr. Blumberg submitted a homework assignment for his MATH401 class taught by Defendant Zhao.

30.     Mr. Blumberg had previous permission to utilize an academic tutor for all homework assignments, including this assignment in Defendant Zhao's class.

31.     Mr. Blumberg utilized his academic tutor for Defendant Zhao's homework assignment. Mr. Blumberg completed the assignment and timely submitted the assignment.

32.     On or about March 28, 2025, without first consulting Mr. Blumberg, Dr. Zhao referred Mr. Blumberg to OSC for alleged academic misconduct concerning this homework assignment based entirely on a "hunch" that Mr. Blumberg cheated on the homework assignment. *See* Conduct Update Letter attached hereto as **Exhibit D**. This OSC complaint came on the heels of the Jewish holiday of Passover, which commenced on April 12, 2025.

33.     Defendant Zhao is not a handwriting expert. Instead of first talking informally with Mr. Blumberg, Defendant Zhao acted on his animus against Mr. Blumberg by intentionally declining to inquire about this assignment and escalating the matter to a formal OSC inquiry.

34.     Specifically, Dr. Zhao claimed his "grader Xiangyi Tao noticed a student's assignment (Ian Blumberg Spring break HW) appears to have inconsistent handwriting between different sections. The handwriting in the first half of the homework is different from his previous homework. Some of them are from Zoom meeting. Clearly these are two different handwritings." *See* Ex. D.

35.     On April 5, 2025, Mr. Blumberg's tutor wrote an email stating Mr. Blumberg performed the entirety of the homework assignment independently. *See* email correspondence attached hereto as **Exhibit E**. Mr. Blumberg provided this information to Defendants.

36.     On April 7, 2025, Mr. Blumberg promptly provided documentation to Defendant Zhao demonstrating he had properly and appropriately utilized an academic tutor, as he was permitted to do, for this homework assignment. *See id.*

37.     Defendants did nothing with this information.

38.     Since Defendant Zhao unnecessarily escalated this matter to a formal OSC investigation, OSC conducted a preliminary interview with Mr. Blumberg.

39.     At the "Preliminary Interview" with Defendant Valdez on April 9, 2025, Defendant Valdez informed Mr. Blumberg "nothing that we are talking about today is resulting in your not being able to move forward with your courses." As explained later, this turned out to be an outright lie and part of Defendant Valdez's deliberate and

despicable attempt to punish Mr. Blumberg based upon her own biases and prejudices against him.

40.    At his "Preliminary Interview," Defendant Valdez mentioned that she did not know what dysgraphia was and commented that AD/HD comes in various forms and that she should just be permitted to do her job, severely undercutting and ignoring Mr. Blumberg's disabilities.

41.    Additionally, on April 9, 2025, Defendant Zhao wrote to Mr. Blumberg that he would be willing to "resolve" this dispute on the condition Mr. Blumberg provide proof of Mr. Blumberg's dysgraphia, accounting for any handwriting variability.  Of course, Defendant Zhao has no training in determining such a condition, yet he decided to interpose his ignorance in this situation.

42.    Nonetheless, Defendant Zhao further explained he informed Defendant Valdez that he would be willing to resolve this dispute, as well.

43.    Defendant Zhao previously expressed his prejudices and bias to Mr. Blumberg about Mr. Blumberg's sincerity about his mental health conditions and how in China, culturally speaking, the Chinese do not give weight to concerns surrounding anxiety and other mental health struggles. Defendant Zhao also exclaimed that in China, there are no accommodations for AD/HD.  Essentially, Defendant Zhao believed that, given his Chinese background, it was all right for him to discriminate against Mr. Blumberg.

44.    Despite Defendant Zhao's referral of Mr. Blumberg to OSC, Mr. Blumberg proactively communicated with Defendant Zhao and Defendant Valdez because Mr. Blumberg did not cheat on his homework assignment and did not appreciate Defendant

Zhao's baseless cheating accusations and failure to understand Mr. Blumberg's medical situation based upon his discriminatory conduct. Among other things, Mr. Blumberg explained his disabilities, tutoring practices, and impact of medication on his handwriting all while advocating for understanding of neurodivergent factors.

45.    While Defendant Zhao's homework referral to OSC was pending, on April 11, 2025, Mr. Blumberg took his MATH401 midterm exam in Defendant Zhao's class.

46.    Literally, minutes before taking the MATH401 midterm, OSC issued a letter to Mr. Blumberg proposing to resolve the OSC investigation *with* sanctions, before even having a formal hearing on the matter. OSC's letter came just one day before the beginning of Passover and forced Mr. Blumberg to devote his attention to the sham investigation rather than observing the important Jewish holiday.

47.    OSC's April 11, 2025 letter caused Mr. Blumberg to experience a major anxiety attack and panic attack during the MATH401 exam, significantly impacting his ability to take the exam. *See* email correspondence attached hereto as **Exhibit F**.

48.    Four days after the midterm exam, *before* the exams were even graded, on April 15, 2025, Mr. Blumberg forwards a letter from Dr. Gregory A. Lobb, Ph.D. to Defendant Valdez, Defendant Zhao, UMD President Pines, Dr. Jones (Director of AD/HD program and Mr. Blumberg's school counselor). *See* Ex. D.

49.    Dr. Lobb is Mr. Blumberg's treating psychologist for his AD/HD and has seen Mr. Blumberg regularly for many years. *Id.* Mr. Blumberg sent this letter to explain to the OSC staff why his handwriting may have been different and to express his desire for the OSC process to end.

50.    In the letter, Dr. Lobb explains Mr. Blumberg has a history of diagnosed dysgraphia related to his AD/HD and it is obvious Mr. Blumberg's behavior and handwriting are very different when he is not taking his medication or when the medication is wearing off. *Id.*

51.    Defendants did nothing with this new information when they should have simply dismissed the OSC investigation. Rather than accepting this medical information, and despite Defendant Zhao's stated desire to dismiss this matter, OSC refused to dismiss the matter and instead Defendants continued to pursue the baseless OSC accusations of cheating, ignoring Mr. Blumberg's documented medical conditions.

52.    On April 16, 2025, Mr. Blumberg and his mother, Dr. Erica Zimmerman, met with Defendant Zhao and Dr. Washington (Undergraduate Mathematics Chair) to inform him about Mr. Blumberg's exam performance and the factors contributing to the performance.

53.    At this meeting, Defendant Zhao said that he would be willing to dismiss the case. Further, Mr. Blumberg accompanied Defendant Zhao and Dr. Zimmerman to Dr. Washington's office wherein Dr. Washington explained he was familiar with Mr. Blumberg's conditions and asked Mr. Blumberg to show him some handwriting samples.

54.    Then, Dr. Washington expressed his willingness to write a letter to OSC, including OSC Director James Bond, to ask for the OSC case to be dismissed.

55.    Mr. Blumberg complied with every directive he was given, including Dr. Washington's request that Mr. Blumberg provide handwriting samples.

56.     After reviewing the handwriting examples provided by Mr. Blumberg, Dr. Washington expressed to Defendants, Mr. Blumberg, and Dr. Zimmerman that this investigation was baseless, without merit, and should be dismissed.

57.     Throughout this process, Mr. Blumberg (with the assistance of Dr. Zimmerman as his advocate) demonstrated his commitment to compliance with this process on multiple fronts: working through an ill-advised OSC investigation and attempting to obtain a make-up examination for his MATH401 midterm.

**Defendant Valdez's Biased and Discriminatory Conduct**

58.     However, Defendant Valdez deliberately worked to undermine Mr. Blumberg's ability to receive a fair process.

59.     Throughout most of this entire "investigation," Defendant Valdez would duplicitously email Mr. Blumberg while blind copying Christopher Lord (counsel for UMD).

60.     Defendant Valdez previously met with Defendant Zhao. Defendant Zhao informed Defendant Valdez that he wanted these "charges" dropped.

61.     Defendant Valdez indicated to Defendant Zhao that she would not permit the charges to be dropped, and she wanted to "teach Mr. Blumberg a lesson," because, most likely, Mr. Blumberg suffered from a disability and was Jewish, something she had actual knowledge of when she engaged in this reprehensible conduct.

62.     On April 16, 2025, Defendant Zhao relayed Defendant Valdez's blatant animus towards Mr. Blumberg to Dr. Zimmerman.

63.     Defendant Valdez's comments about teaching Mr. Blumberg a lesson demonstrate that this entire process was purely punitive and amounted to a sham.

64.     On April 18, 2025, Dr. Erin Jones submitted a clinical context letter to OSC, emphasizing the need to consider Mr. Blumberg's AD/HD and dysgraphia in this OSC investigation. *See* letter attached hereto as **Exhibit G**.

65.     Despite overwhelming evidence and documented proof of Mr. Blumberg's case, including Mr. Blumberg's well-documented disabilities, Defendant Valdez repeatedly pressured Mr. Blumberg over the course of these several weeks that he needed to resolve this OSC dispute.

66.     Through Defendant Valdez's disgusting discriminatory and antisemitic pressure campaign, Mr. Blumberg was presented with three choices: (1) to accept a letter grade reduction, a "zero" on the assignment, and the submission of a "reflection" paper; (2) participation in a disciplinary conference where more charges could be levied against Mr. Blumberg; or (3) participation in a disciplinary conference board.  Defendant Valdez was basically seeking to extort Mr. Blumberg to validate her discriminatory and antisemitic behavior.

67.     On April 22, 2025, Defendant Valdez claimed that the deadline to accept the resolution agreement had passed, despite her own previous confirmation of an April 22, 2025 deadline.

68.     For weeks, Defendants relentlessly harassed Mr. Blumberg into "picking" a resolution for his OSC investigation even though, according to Defendants' own policies, if Mr. Blumberg did not choose to resolve this dispute, UMD would automatically refer Mr. Blumberg to a disciplinary conference board hearing.

69.     Given this traumatic experience with the OSC investigation relating to Mr. Blumberg's homework assignment and the unsupported allegations of cheating and

plagiarism, on April 22, 2025, Mr. Blumberg submitted a formal request to Dr. Washington to retake the MATH401 midterm, citing the impact of the OSC investigation and his anxiety on his exam performance.

70.     Defendant Zhao summarily responded to this request that make-up exams are not permitted for poor performance despite being fully aware of Mr. Blumberg's accommodations, documented disabilities, and ongoing OSC investigation. Moreover, Defendant Zhao denied Mr. Blumberg's makeup request despite his receipt of evidence supporting Mr. Blumberg's condition that Defendant Zhao himself requested.

71.     On April 25, 2025, Mr. Blumberg and his mother again met with Dr. Washington, who expressed support for dismissing the OSC case and recommended that Defendant Zhao offer a make-up exam to Mr. Blumberg.

## Escalation of Discrimination Against Mr. Blumberg

72.     Given Defendants did not dismiss the baseless OSC charge or permit Mr. Blumberg to retake his midterm examination despite clear documentation of his disabilities and accommodation requirements, Dr. Zimmerman (Mr. Blumberg's mother and advocate) requested of Dr. Washington that he speak with Defendant Zhao about permitting a make-up examination.

73.     Dr. Washington confirms that he recommended Defendant Zhao permit a make-up examination but claimed he cannot compel Defendant Zhao to grant it. Dr. Washington further states he does not know if there is a legal requirement for a make-up in this case but defers to legal counsel. *See* email attached hereto as **Exhibit H**.

74.     Mr. Blumberg remained steadfast in his commitment to clear his name in light of the OSC investigation, the MATH401 midterm issue, and the numerous obstacles Defendants threw at him.

75.     Between April 29-30, 2025, Mr. Blumberg obtained a letter from his psychologist who confirmed his anxiety attack and supported Mr. Blumberg's request for a make-up examination. Mr. Blumberg submitted the same to Defendant Zhao after Defendant Zhao requested that Mr. Blumberg provide appropriate documentation of his disability. *See* letter attached hereto as **Exhibit I**.

76.     This letter was evidently not sufficient to please Defendant Zhao. Defendant Zhao then had the audacity to ask for a letter that *definitively* stated Mr. Blumberg needed a make-up examination.

77.     Still, Mr. Blumberg complied with Defendants' requests despite their attempts to make resolving what is essentially a non-issue into a full-blown scandal, while taking advantage of and retaliating against Mr. Blumberg.

78.     On April 30, 2025, Dr. Jones wrote an email to Defendant Zhao stating she "agree[s] that [Mr. Blumberg] should be allowed to retake the exam due to a panic attack impacting his performance on the last test." *See* screenshot attached hereto as **Exhibit J**.

79.     Defendant Zhao *again* moves the metaphorical goal posts on Mr. Blumberg and, with absolutely no justification whatsoever, claims Dr. Jones' email needed to explicitly state a make-up exam is appropriate due to the anxiety attack, and not just suggest consideration of the exam. *See* email attached hereto as **Exhibit K**.

80.     Neither the CAI nor Defendant Zhao's MATH401 syllabus require this level of excruciating gymnastics to obtain a make-up examination. These exercises were purely punitive in nature.

81.     Despite all of the obstacles that Defendant Zhao lodged towards Mr. Blumberg, Defendant Zhao ultimately denies Mr. Blumberg's make-up requests and states, without support, that make-up requests should be made immediately after the exam, *despite* the fact that Mr. Blumberg met with Defendant Zhao on April 16, 2025 to discuss the exam and the issues surrounding it, well before the grades were released on April 21, 2025. Dr. Washington is apprised of this conversation.

82.     Ultimately, on April 30, 2025, Defendant Zhao denied Mr. Blumberg's request for a make-up exam despite clear documentary evidence that overwhelmingly supported Mr. Blumberg's request for a make-up exam. *See* Ex. K.

83.     At this time, Defendant Zhao informed Mr. Blumberg he knew that Mr. Blumberg had legal counsel for the OSC investigation and he would not offer a make-up exam in this course without appropriate "legal documentation" forcing him to offer a make-up exam.

84.     Defendant Zhao's reliance on nearly every procedural ground possible, seemingly going out of his way to avoid accommodating Mr. Blumberg. *See* email attached hereto as **<u>Exhibit L</u>**. Defendant Zhao cites procedural grounds for denying Mr. Blumberg's request, including timing, the apparent lack of immediate reporting, and the lack of an explicit policy supporting Mr. Blumberg. *Id.* Defendant Zhao's reasoning for denying this make-up request is entirely pretextual as against Mr. Blumberg's disabilities and is entirely without merit.

85. Defendants continued to escalate their attacks on multiple fronts against Mr. Blumberg: the meritless OSC cheating investigation and the MATH401 make-up exam dispute.

86. Specifically, on or about May 5, 2025, Mr. Blumberg was informed by Defendant UMD that he was being threatened with a twelve-month "XF" grade (failure due to academic dishonesty) grade in MATH401 specifically after it was warned that it should have no contact with Mr. Blumberg except through his legal counsel.

87. Additionally, also on May 5, 2025, Defendants inexplicably and without prior notification removed Defendant Valdez from Mr. Blumberg's OSC case and that his OSC coordinator had been switched, adding another procedural hurdle to the biased and baseless OSC investigation. *See* Ex. D.

88. Notably absent from the May 5, 2025 letter is Dr. Jones' clinical statement explaining the handwriting discrepancy and Dr. Washington's recommendation to dismiss the OSC case. At best, these critical, exculpatory documents were accidentally omitted, a grievous error on Defendants' part. At worst, Defendants deliberately suppressed and excluded this evidence.

89. Defendants removed Defendant Valdez from Mr. Blumberg's OSC case despite a statement from Mr. James Bond, Director of OSC, previously stating that Defendant Valdez would oversee Mr. Blumberg's OSC case through its conclusion. *See* email attached hereto as **Exhibit M**.

90. Obviously, the removal of Defendant Valdez from this matter confirms that the other Defendants recognize she acted in a discriminatory and antisemitic manner towards Mr. Blumberg. Thus, there should be no issue finding against Defendant Valdez.

91.    Moreover, Mr. Blumberg vehemently disputes any wrongdoing and, through counsel, requested the matter be dismissed for lack of evidence and because the OSC referral was motivated by discriminatory and antisemitic animus toward Mr. Blumberg because of his disability and religion.

92.    As described above, rather than dismissing the OSC investigation, in the midst of a fluid situation involving Mr. Blumberg, the Defendants escalated the matter by:

    a.    Threatening Mr. Blumberg with a "XF" failing grade MATH401 and potential suspension;

    b.    *Expanding* the original homework allegations to include plagiarism, despite lacking any evidence to support the claim;

    c.    Replacing the OSC coordinator admitting her bias and discrimination as well as the disadvantages she created towards Mr. Blumberg; and

    d.    Blocking Mr. Blumberg's student account, preventing him from registering for classes for the Fall 2025 semester.

93.    Defendants continued to escalate their tactics in a discrimination campaign against Mr. Blumberg *without* having a formal hearing.

94.    Defendants, individually and collectively, continued their pursuit of misconduct charges despite Defendant Zhao and Dr. Washington's comments to the effect of supporting dismissal of the OSC investigation.

95.    On or about May 4, 2025, before her removal for her discriminatory and antisemitic behavior, Defendant Valdez placed a hold on Plaintiff's student account, making him "judicially ineligible," and further blocking his ability to register for Fall 2025 classes which impedes his progress toward graduation. *See* screenshots attached hereto as **<u>Exhibit N</u>**.

96.     Defendant Valdez's escalation against Mr. Blumberg directly contradicts her earlier April 9, 2025 statement wherein Valdez claimed Mr. Blumberg would be able to register for classes.

97.     Defendant Valdez previously insisted that only her office could dismiss the OSC investigation, ignoring both Mr. Blumberg's conditions and recommendations from the faculty.

98.     Defendant Valdez and OSC instituted this judicial hold *before* Defendants even adjudicated and resolved Mr. Blumberg's matter.

99.     Mr. Blumberg's academic advisor instructed him to enroll in prerequisite courses urgently, but OSC's registration block prevented registration.

100.    Through counsel, Mr. Blumberg repeatedly requested the OSC block be lifted. In response, Defendants stated that communications must flow exclusively though Christopher Lord while simultaneously directing Mr. Blumberg to conduct various academic units directly, placing him in an untenable position despite the fact Mr. Lord had previously been told no one from Defendant UMD should contact Mr. Blumberg directly.

101.    Despite Lord's instruction that all communications must flow through him, Defendant Valdez continued to email Mr. Blumberg.

102.    On May 5, 2025, Lord then informed Mr. Blumberg's counsel that UMD would continue its "preliminary review," claimed that the process was neither "grinding" nor discriminatory, and threatened Mr. Blumberg's counsel for allegedly contacting UMD faculty directly despite his hypocrisy for violating the Rules of Professional Conduct by ignoring the directive not to contact Mr. Blumberg directly.  Of course, he ignored the request from Mr. Blumberg's counsel as to who would represent these faculty members.

103.    Defendants' actions have caused Mr. Blumberg severe emotional distress, academic jeopardy, lost educational opportunity, and reputational damage.

104.    Defendants' actions have further caused Mr. Blumberg severe physical distresses as evidenced by Mr. Blumberg's severe eczema and asthma flare, a direct result from his complications with OSC. Mr. Blumberg was forced to emergently receive additional medications for these flare ups.

105.    Defendants' actions continue to cause Mr. Blumberg harm. As recently as May 12, 2025, Mr. Blumberg experienced a severe anxiety attack during his MATH401 final examination stemming from Defendants' actions and the OSC investigation. Mr. Blumberg informed the pertinent parties of his troubles during the MATH401 final examination and documented it accordingly.

106.    Defendants reinstated minimal registration privileges only after Mr. Blumberg's counsel threatened litigation. However, Defendants continue to pursue baseless plagiarism charges, maintain the possibility of failing Mr. Blumberg, and refuse to stop discriminatory disciplinary measures.

107.    Defendants' egregious conduct is part of a pattern of discrimination against Mr. Blumberg because of his disability necessitating accommodations and because of his adherence to the tenants of Judaism, requiring schedule adjustments Defendant Valdez and others viewed negatively.

108.    This is reflected in the despicable conduct exhibited both by Defendants Valdez and Zhao. In particular, Defendant Valdez engaged in a sham "investigation" that was pre-ordained to find, without any evidence at all, Mr. Blumberg "guilty" so she could

"teach him a lesson." Now, it is time to teach Defendant Valdez a lesson that disability discrimination and antisemitism are prohibited by law.

109.    As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Mr. Blumberg has suffered a loss of tuition dollars, delay in bachelor's degree completion, emotional suffering, mental anguish, humiliation, embarrassment, loss of tutoring dollars, and other compensable injuries.

110.    Pursuit of administrative remedies is not a prerequisite to Mr. Blumberg's ADA Title II or § 1983 claims.

111.    Mr. Blumberg has, still, filed an internal appeal through his counsel requesting dismissal of all charges, removal of the OSC registration clock, and restoration of a discrimination free educational experience. No decision has been issued.

112.    Mr. Blumberg's Disciplinary Conference Board is scheduled for May 13, 2025 at 3:00 p.m. ET and, without Court intervention, Mr. Blumberg faces the immediate risk of a jeopardized academic and professional future.

## <u>COUNT ONE</u>
**EMERGENCY INJUNCTIVE RELIEF (ALL DEFENDANTS)**

113.    Mr. Blumberg incorporates by reference paragraphs 1 through 111 as if fully set forth herein.

114.    Mr. Blumberg is facing immediate and irreparable harm due to Defendants' actions, including the threat of a failing grade, allegations of plagiarism and cheating, and a course registration block preventing him from enrolling in the required courses. Furthermore, these threats will cause Mr. Blumberg irreversible damage in the future workplace.

115.   Mr. Blumberg has demonstrated a substantial likelihood of success on the merits of his claims under the ADA, Section 504, 42 U.S.C. § 1983, and the Due Process Clause.

116.   The balance of equities tips in Mr. Blumberg's favor because the harm to Mr. Blumberg outweighs any potential harm to Defendants from granting the temporary restraining order.

117.   A temporary restraining order is in the public interest as it will prevent unlawful discrimination and retaliation based on disability and religion.

118.   Mr. Blumberg requests that this Court issue a temporary restraining order, *inter alia*, enjoining Defendants from failing Mr. Blumberg in any of his classes including MATH401, pursuing baseless plagiarism and cheating charges, maintaining the OSC registration block, and potentially suspending him from UMD.

### COUNT TWO
### VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12131 ET SEQ) (ALL DEFENDANTS)

119.   Mr. Blumberg incorporates by reference paragraphs 1 through 117 as if fully set forth herein.

120.   UMD is a "public entity" within the meaning of Title II.

121.   Plaintiff is a "qualified individual with a disability" within the meaning of Title II.

122.   Defendants, acting through OSC, Valdez, and Zhao, excluded Mr. Blumberg from participation in, denied him the benefits of, and subjected him to discrimination in UMD's services, programs, and activities, including course registration and disciplinary proceedings, on the basis of Mr. Blumberg's disabilities.

123.    Defendants willfully failed to make reasonable modifications to its policies, practices, and procedures, namely by Defendants refusal to dismiss baseless disciplinary charges and imposing an OSC hold, both of which denied Mr. Blumberg the opportunity to pursue and complete his education.

124.    Defendants acted with deliberate indifference to Mr. Blumberg's federally protected rights under disability law entitling him to compensatory damages.

## COUNT THREE
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. § 794) (ALL DEFENDANTS)

125.    Mr. Blumberg incorporates by reference paragraphs 1 through 123 as if fully set forth herein.

126.    UMD and the University receive federal financial assistance.

127.    For the reasons mentioned above, Defendants discriminated against Mr. Blumberg solely because of his disability and Defendants failed to ensure access to programs, in violation of Section 504.

128.    Defendants acted with deliberate indifference to Mr. Blumberg's federally protected rights, entitling him to compensatory damages.

## COUNT FOUR
## RELIGIOUS DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983 (FIRST AND FOURTEENTH AMENDMENTS) (ALL DEFENDANTS)

129.    Mr. Blumberg incorporates by reference paragraphs 1 through 127 as if fully set forth herein.

130.    Mr. Blumberg's observance of Judaism is protected by the First Amendment to the United States Constitution.

131.    By and through the policies and actions of Defendants described in this Complaint, Defendants intentionally hindered Mr. Blumberg's exercise of religion and treated him differently from similarly situated non-Jewish students, denying him equal protection of the law.

132.    Defendants evidenced discriminatory motive by escalating their disciplinary moves after Plaintiff sought extensions for Jewish holidays.

133.    Defendants' conduct was under the color of state law and was the proximate cause of Mr. Blumberg's injuries.

## COUNT FIVE
### RETALIATION (ADA TITLE II AND SECTION 504) (ALL DEFENDANTS)

134.    Mr. Blumberg incorporates by reference paragraphs 1 through 132 as if fully set forth herein.

135.    Mr. Blumberg engaged in protected activity by requesting accommodations for his disabilities and by filing complaints through his counsel.

136.    Defendants retaliated by, *inter alia*, blocking Mr. Blumberg's registration, threatening him with a failing grade, and lodging additional, unsubstantiated plagiarism allegations after retaining legal counsel.

137.    This retaliation would deter any reasonable student from asserting his rights and is unlawful under the ADA and Section 504.

## COUNT SIX
### VIOLATION OF THE FOURTEENTH AMENDMENT (DUE PROCESS)

138.    Mr. Blumberg incorporates by reference paragraphs 1 through 136 as if fully set forth herein.

139.    The Fourteenth Amendment to the United States Constitution guarantees each person the right to life, liberty, or property with due process of law.

140.    Defendants, individually and collectively, violated Mr. Blumberg's constitutional rights to Due Process when they impeded his protected liberty and property interests in a continued and discrimination-free higher education at a public university.

141.    Defendants, individually and collectively, violated Mr. Blumberg's constitutional rights to Due Process when they intentionally and maliciously deprived Mr. Blumberg of those interests without regard for due process of law by, *inter alia*, harassing him into accepting a pre-ordained punishment, their failure to fully investigate before forcing him to accept OSC's charges, and failure to otherwise comply with the CAI procedures.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ian Blumberg respectfully requests that this Court:

A.    Enter judgment declaring that Defendants acts and omissions violated Title II of the ADA, Section 504, 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution;

B.    Permanently enjoin Defendants from pursuing any further OSC charges and from otherwise engaging in further discrimination and/or retaliation against Mr. Blumberg;

C.    Order Defendants to expunge and delete any and all references to the alleged misconduct from Mr. Blumberg's official academic and disciplinary records;

D.    Award Mr. Blumberg compensatory damages in an amount to be proven at trial;

E.      Award Mr. Blumberg punitive damages against the individual Defendants

for willful, wanton, and reckless disregard of Mr. Blumberg's rights;

F.      Award costs of litigation, including reasonable attorneys' and expert fees,

and pre- and post-judgment interest; and

G.      Grant such other and further relief as the Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Mr. Blumberg demands a trial by jury on all issues so triable.

I DECLARE UNDER PENALTY OF PERJURY THAT
THE FOREGOING IS TRUE AND CORRECT.

_Ian Blumberg_____

IAN BLUMBERG

Executed on this date: _5/12/2025_____

At this city and state: _Baltimore County, MD_____

Respectfully submitted,

**THOMPSON HINE LLP**

By: _/s/ Joseph A. Smith____
     Joseph A Smith, Bar No. 19292
1919 M Street, NW, Suite 700
Washington, DC 20036
Telephone: (202) 263-4145
Facsimile: (202) 331-8330
joe.smith@thompsonhine.com

Ernest Edward Badway
(*Pro Hac Vice* Motion Forthcoming)
300 Madison Ave., 27th Floor
New York, New York 10017
Telephone: (212) 908-3932
Facsimile: (212) 344-6101
ernest.badway@thompsonhine.com

Micah J. Fishman
(*Pro Hac Vice* Motion Forthcoming)
20 N. Clark Street, Ste. 3200
Chicago, Illinois 60602
Telephone:  312-998-4240
Facsimile:   312-998-4245
micah.fishman@thompsonhine.com

*Attorneys for Plaintiff Ian Blumberg*