**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| IAN BLUMBERG, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. 8:25-cv-1538-PX |
| UNIVERSITY SYSTEM OF MARYLAND *et al.*, | * | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending in this educational discrimination case is the motion to dismiss filed by Defendants University System of Maryland, University of Maryland College Park, the Office of Student Conduct at the University of Maryland College Park ("the University"), Jennifer Valdez ("Valdez"), and Junyan Zhao ("Dr. Zhao") (collectively, "Defendants"). ECF No. 19. The matter is fully briefed, and the Court does not need a hearing. D. Md. Loc. R. 105.6. For the following reasons, the motion is granted, and the Complaint is dismissed.

I.      **Background**

The Court accepts the Complaint facts as true and most favorably to Plaintiff, Ian Blumberg ("Blumberg"). Blumberg is an undergraduate student at the University of Maryland who receives accommodations through the University's Accessibility and Disability Services office ("ADS") for his diagnosed Attention Deficit/Hyperactivity Disorder ("ADHD") and dysgraphia. ECF No. 1 ¶¶ 1, 11. Blumberg's accommodations include extended time on exams, taking the exams in a distraction-reduced environment at the ADS office, and additional blank paper to record his work. *Id.* ¶ 19. Blumberg is also an observant Jewish student active in the school's Hillel. *Id.* ¶ 21. Those involved in this matter are aware of Blumberg's Jewish faith. *Id.* ¶ 22.

1

In the Spring of 2025, Blumberg was enrolled in Math401 taught by Dr. Zhao. ECF No. 1 ¶¶ 26–27. Blumberg also had a math tutor with whom he worked for all assignments in this class. *Id.* ¶¶ 30–31. On March 28, 2025, Dr. Zhao filed a complaint against Blumberg with the Office of Student Conduct ("OSC"), the office responsible for enforcing the University's Code of Academic Integrity ("CAI"). *Id.* ¶¶ 4, 32. Dr. Zhao described in the OSC complaint that Blumberg had submitted an assignment that included handwriting that was "different from [Blumberg's] previous homework." ECF No. 1-4 at 6. Dr. Zhao further explained that not only was the handwriting completely different, but some of the assignment pages with the markedly different handwriting were screen captures from a Zoom meeting. *Id.* Dr. Zhao also attached the handwritten assignment to show the vast difference between Blumberg's known handwriting and that of the whiteboard Zoom screen captures. *Id.* at 9–32.

After learning of the OSC complaint, Blumberg obtained a note from his tutor (identified only as "Josh"), dated March 31, which confirmed that Blumberg had "completed all the work independently" for the assignment, and that during their "Zoom session," Josh's role had been "strictly to support [Blumberg's] understanding and ensure accuracy." ECF No. 1-5. Curiously, the note did not clarify who wrote the Zoom whiteboard notes that had been submitted as Blumberg's own work. *Id.* Blumberg provided Josh's written note to Dr. Zhao on April 7. ECF No. 1 ¶ 36.

On April 9, OSC assigned its coordinator, Jennifer Valdez, to the OSC complaint. ECF No. 1 ¶ 39. Valdez conducted a "Preliminary Interview" of Blumberg as part of OSC's investigation and consistent with OSC policy. *Id.* During her meeting with Blumberg, Valdez mentioned that ADHD comes in many forms and admitted to not being familiar with dysgraphia. *Id.* ¶ 40. That same day, Dr. Zhao communicated to OSC and Blumberg his willingness "to resolve

2

the dispute" if Blumberg could show proof that he suffers from dysgraphia and that the disorder explains the vast difference in the handwriting samples. *Id.* ¶¶ 41–42. Dr. Zhao also commented that his birth country, China, does not have comparable accommodations for ADHD and that "the Chinese do not give weight to concerns surrounding anxiety and other mental health struggles." *Id.* ¶ 43.

On April 11, 2025, Blumberg took his midterm in Math401. ECF No. 1 ¶ 45. Moments before the exam was to begin, Blumberg received written notice of OSC's offer to resolve the OSC complaint with sanctions. *Id.* ¶ 46. This notice also came shortly before the Passover holiday. *Id.* ¶ 69. Although the Complaint does not make clear OSC's proposed resolution, evidently OSC gave Blumberg the option of taking a letter-grade reduction in the class, the submission of a reflection paper, and a "zero" on the assignment, or otherwise proceed to a hearing. *Id.* ¶ 66. Blumberg had until April 22 to accept the proposed resolution. *Id.* ¶ 67. This letter caused Blumberg to have an anxiety and panic attack during the midterm. *Id.* ¶ 47. Blumberg did not bring this attack to anyone's attention at the time.

Four days later, on April 15, Blumberg's treating psychologist, Dr. Gregory A. Lobb, penned a letter to OSC that confirmed Blumberg's treatment for ADHD. ECF No. 1 ¶ 48. Dr. Lobb further opined that Blumberg's "behavior and his handwriting are very different when he is not taking his AD/HD medication" or when the medication "is wearing off." ECF No. 1-4 at 33.

The next day, on April 16, Blumberg and his mother, Dr. Erica Zimmerman, met with Dr. Zhao and the undergraduate Chair of the Mathematics Department, Dr. Washington, about the OSC complaint. ECF No. 1 ¶ 52. At the meeting, Dr. Zhao said he would be willing to "dismiss" the OSC complaint, and Dr. Washington asked to see the handwriting examples. *Id.* Dr. Washington also expressed "openness" to writing the Director of OSC, James Bond ("Bond"),

about dismissing the complaint. *Id.* ¶ 53. Dr. Washington reviewed the handwriting samples and agreed the OSC complaint should be dismissed. *Id.* Blumberg did not raise during the meeting with Dr. Washington the difficulties he had on the midterm.

As for dismissing the OSC complaint, Valdez did not agree with that recommendation and voiced that she wanted to "teach" Blumberg "a lesson." ECF No. 1 ¶ 61. That same day, Bond confirmed for Blumberg in writing that "Dr. Zhao is not able to dismiss your case. That can only happen through our office after a thorough investigation." ECF No. 1-13.

Two days later, Dr. Erin Jones from the University's "Succeeds ADHD Clinic" emailed Bond directly to "offer insight" into "relevant clinical factors" regarding Blumberg. ECF No. 1-7. Dr. Jones echoed that "it is not uncommon for individuals with ADHD and dysgraphia to show variability in handwriting depending on factors such as fatigue, time of day, and medication status." *Id.* Dr. Jones also gave Bond articles on ADHD, dysgraphia and academic support for OSC's consideration. *Id.*

On April 22, and for the first time, Blumberg submitted a formal request to Dr. Washington to retake the Math401 midterm, explaining his anxiety about the OSC investigation affected his performance. ECF No. 1 ¶ 69. Dr. Zhao, in response, denied the request, stating that "make up exams are not permitted for poor performance." *Id.* ¶ 70. Three days later, Blumberg and Dr. Zimmerman met again with Dr. Washington. *Id.* ¶ 71. Washington expressed support for Blumberg retaking the midterm and for the OSC investigation to be dismissed, but made clear that he could not force Dr. Zhao to grant a makeup exam. *Id.* Dr. Zhao reconfirmed in an email that he would not permit a makeup exam because Blumberg did not inform Dr. Zhao of his difficulties immediately after the exam. *Id.* ¶ 81. Instead, Blumberg waited until he knew he did not get a good grade and then asked Dr. Zhao for the exam retake. *Id.* Dr. Zhao closed with reiterating that

4

he would not provide a makeup exam unless he was presented with a University policy that compelled him to do so. *Id.* ¶¶ 71, 83.

Shortly thereafter, Dr. Jones emailed Dr. Zhao to confirm that she agreed Blumberg should be permitted to retake the midterm exam. ECF No. 1-10. In response, Dr. Zhao emailed Blumberg and cc-ed Dr. Washington that Dr. Zhao would not give the exam again until he was told in writing that he had to. ECF No. 1-11.

On April 30, Dr. Zhao sent a group email to Blumberg, copying Washington, Valdez, and others. *Id.* ¶ 82. *See also* ECF No. 1-12. In it, Dr. Zhao articulated his reasons for refusing to permit the makeup examination midterm. Dr. Zhao described as "[v]ery important" to his decision that the ADS testing room where Blumberg takes his exams includes a posting which requires students to "report any issues that arise during the exam," and that "[f]ailure to do so at the time forfeits the right to raise concerns afterwards." ECF No. 1-12. Blumberg, however, voiced no concerns during or immediately after the exam. *Id.* Rather, Blumberg waited nine days to ask Dr. Zhao for a makeup, and only after the grades had been released. *Id.* Dr. Zhao further underscored that no other University authority required him to accede to Blumberg's request. Dr. Zhao closed with his decision and emphasized he will "maintain this decision unless presented with a **legal document** that requires me to act otherwise." *Id.* (emphasis in original).

On May 5, OSC informed Blumberg in writing that based on its investigation, OSC formally charged Blumberg with two violations of the CAI; namely (1) "Cheating: fraud, deceit or misconduct in any academic course . . . " and (2) "Plagiarism: representing the words or ideas of another as one's own in any academic course, exercise or research . . . ." ECF No. 1-4 at 2. The letter further informed Blumberg that the charges would be resolved in a Disciplinary Conference

Board on May 13, 2025 at 3:00 PM as defined in the CAI. *Id.*[1] The letter also advised Blumberg of his right to a student advocate from the Student Legal Aid Office, and forewarned Blumberg that postponements are not granted absent a showing of "significant and unavoidable hardship" in participating on the scheduled date. *Id.* Decisions, the letter warned, would be made in his absence. *Id.*

Despite Valdez's initial assignment to Blumberg's matter, the letter was authored by another OSC coordinator who assumed responsibility for Blumberg's case. Also, according to Blumberg, at some point, OSC "escalated the matter" by "threatening Blumberg with a failing grade and potential suspension;" and putting a temporary hold on Blumberg's ability to register for fall classes. *Id.* ¶ 92. The Complaint does not make clear when OSC took such actions.

On May 12, the day before the scheduled Disciplinary Board hearing, Blumberg filed a six-count Complaint against Defendants in this Court. ECF No. 1. Count I requests "emergency injunctive relief," which the Court has already resolved by separate motion and evidentiary proceedings.[2] Blumberg also alleges disability discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* (1990) (Counts II & V) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (Count III); "intentional hinderance" of Blumberg's free exercise of religion cast as an equal protection violation (Count IV); and denial of due process in connection with the OSC complaint (Count VI). Defendants now move for dismissal of all counts. For the following reasons, the motion is GRANTED.

---

[1] The letter included an embedded link for access to the CAI. Blumberg also filed a hard copy at ECF No. 2-1 appended to his motion for injunctive relief.

[2] On July 17, 2025, the Court held hearing on Blumberg's motion for injunctive relief. Once Blumberg learned that the outcome of the OSC complaint had been an "F" without indication of academic dishonesty, he withdrew the motion and has never resurrected it. ECF Nos. 25 & 26. Thus, the Court dismisses Count I, which seeks injunctive relief, as moot.

**II.     Standard of Review**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The Court must be able to deduce "more than the mere possibility of misconduct"; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *See Ruffin v. Lockheed Martin* Corp., 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd in relevant part*, 659 F. App'x 744 (4th Cir. 2016). It must also "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

With this standard in mind, the Court turns first to the disability-related claims.

**III.     Analysis**

**A.  Disability Discrimination Claims (Counts II & III)**

Because the ADA and Rehabilitation Act discrimination claims are substantially similar, the Court reviews them together. *See Seremeth v. Board v. County Commr's Frederick County*, 673 F.3d 333, 336 (4th Cir. 2012); *Doe v. Univ. of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265

(4th Cir. 1995).[3]  Where, as here, no facts make plausible direct discrimination, the Court adopts

the well-known burden shifting analysis announced in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, (1973).  *Neal v. E. Carolina Univ.*, 53 F.4th 130, 135 (4th Cir. 2022) (*McDonnell*

*Douglas* analysis applies to "ADA discrimination claims in the context of collegiate studies.").

Under this standard, the plaintiff must allege facts to support the prima facie case that he (1) suffers

from a disability, (2) he is otherwise qualified to participate in the University program, and (3) he

was excluded from the program on the basis of his disability.[4]  *Id.* (quoting *Halpern v. Wake Forest*

*Univ. Health Scis.*, 699 F.3d 454, 461 (4th Cir. 2012)).  If the prima facie case is made plausible,

then the burden shifts to the defendant to show that its decision was made "for a legitimate,

nondiscriminatory reason," and if that factor is met, then the presumption of discrimination is

rebutted, and the burden returns to the plaintiff to prove that the university's proffered reason was

pretext for discrimination.  *Id.  See also Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir.

2001).

The University principally contends that the claim fails because no facts show that it had

excluded Blumberg from any educational programming on account of his disability.  ECF No. 19-

1 at 20–22.  Blumberg responds that the University's temporary "hold" on his registration for the

fall amounts to sufficient exclusion.  ECF No. 20 at 7.  Nothing in the Complaint makes plausible

---

[3] Neither the Rehabilitation Act nor the ADA permits individual capacity suits against employees or state officials. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 484 (4th Cir. 2005); *Barnes v. Young,* 565 F. App'x 272, 273 (4th Cir. 2014) ("'Title II of the ADA . . . [does not] provide[ ] for individual capacity suits against state officials.'") (quoting *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001)) (alterations in original).  Thus, the claims are dismissed against Valdez and Dr. Zhao on this basis alone.

[4] As to the third element, the Rehabilitation Act requires the Plaintiff to show that his disability was the "but for" cause of the discrimination, whereas under the ADA, the disability need only be a motivating factor.  *See Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 462 (4th Cir. 2012) (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468-69 (4th Cir. 1999)).

that Blumberg had been *excluded* from registration.[5]  Thus, the mere temporary hold alone cannot sustain the claim.

Blumberg next obliquely refers to the OSC process as "biased" and appears to rest his discrimination claim on the "clear documentary evidence" supporting his disabilities.  ECF No. 1 ¶¶ 82, 87.  But he points to no Complaint facts that signal his exclusion from University programming on account of his disabilities.  Rather, when viewing the Complaint most favorably to Blumberg, Dr. Zhao referred the matter to OSC because of the handwriting discrepancies *and* because certain of the pages were Zoom screen captures which suggested that someone else had done the assignment for Blumberg.  This, combined with Blumberg's tutor confirming that he tutored Blumberg by Zoom, plausibly added to the viability of the OSC complaint.  That Dr. Zhao and OSC pursued the matter even in the face of contrary evidence alone does not give rise to an inference of discrimination.  *Siefken v. Vill. of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995) (While the Rehabilitation Act and ADA prohibit discrimination, they do not "erect an impenetrable barrier around the disabled [plaintiff].").  This is so because "the law does not require the school to ignore misconduct" simply because the student suffers from a disability.  *Halpern*, 669 F.3d at 465 ("'[M]isconduct—even misconduct related to a disability—is not itself a disability' and may be grounds for dismissal.") (quoting *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 n. 3 (4th Cir.1997)).

Nor can Dr. Zhao's decision to deny Blumberg a midterm retake make plausible a discrimination claim.  The stated grounds for this decision had no plausible connection to Blumberg's disability.  Rather, Dr. Zhao refused the retake exam because Blumberg had not

---

[5] Additionally, at the hearing on Blumberg's motion for injunctive relief, the University confirmed that the hold was lifted after the May 13 disciplinary hearing.  ECF No. 12-7 ¶ 14.  Blumberg does not dispute the hold was lifted in time to for him to register for fall classes.

complied with the ADS rules requiring Blumberg to alert a staff person during the test to any difficulties. ECF No. 1-12. Further, Dr. Zhao made clear that Blumberg could not seek a retest after he knew his test results because Dr. Zhao does not allow makeup examinations for "poor performance." By contrast, nothing suggests that Dr. Zhao had denied Blumberg *because* Blumberg suffers from ADHD or dysgraphia.[6]

Alternatively, even if Blumberg articulated sufficient facts to raise an inference of discrimination, the University's legitimate non-discriminatory reasons for denying Blumberg the retake examination has not been rebutted. It is undisputed that Blumberg did not follow ADS directives that students must report difficulties with the exam at the time, not several days thereafter. ECF No. 1-12 at 2 (Director of ADS Tessa Cahill confirming for Dr. Zhao that "[a]n announcement is posted in the ADS testing room stating that students must report any issues that arise during the exam. Failure to do so at the time forfeits the right to raise concerns afterward."). *See also* ECF No. 12-2 ¶ 11 (Cahill attesting "[ADS] requires students to immediately report any issue they experience during an examination in the testing office. If a student fails to raise any issue during the examination, . . . the student is deemed to have waived their ability to raise the issue later and seek some type of remedy. All testing rooms . . . have signage with this information."). Of the stated reasons for the refusal, this was to Dr. Zhao "very important." ECF No. 1-12. Dr. Zhao also emphasized the legitimate pedagogical reasons for insisting such requests take place before the student learns of his grade so that it is not used merely to fix "poor performance." *Id.* (noting that Blumberg sought a makeup "nine days after the exam and after the grades were released."). Blumberg, however, has averred no facts to suggest these legitimate non-

---

[6] The Court further disagrees with Blumberg that discriminatory animus may be inferred from Dr. Zhao's comment about Chinese views on mental health disorders. Dr. Zhao never indicated that he agreed with such views, and to assume otherwise would embrace stereotypic overgeneralizations that anti-discrimination statutes seek to eradicate.

discriminatory grounds for denial were pretextual.   Thus, the discrimination claims fail as a matter of law.

### B.     Retaliation (Count V)

Turning next to the retaliation claims, the University contends that no facts make plausible any adverse acts were causally related to Blumberg having availed himself of the protections of the disability discrimination statutes.  ECF No. 19-1 at 26.  For the retaliation claim to proceed, some facts must make plausible that (1) engaged in activity protected under the ADA or Rehabilitation Act; (2) the defendant took adverse action against the plaintiff; and (3) a causal connection exists between the two.  *Zimmeck v. Marshall Univ. Bd. of Governors*, 632 Fed. Appx. 117, 120 (4th Cir. 2015).  Close temporal proximity between the protected activity and adverse action usually will be sufficient to permit the inference of retaliatory animus.  *Cf. Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 254 (4th Cir. 2015) (citing *King v. Rumsfeld*, 328 F.3d 145, 151 & n. 5 (4th Cir. 2003)) (two-and-a-half month gap between protected activity and an adverse employment action sufficiently proximate to establish causation in the prima facie case).

Blumberg avers broadly that "Defendants retaliated by, *inter alia*, blocking Mr. Blumberg's registration, threatening him with a failing grade, and lodging additional, unsubstantiated plagiarism allegations after retaining legal counsel" because he had "request[ed] accommodations for his disabilities and filed complaints through counsel."  ECF No. 1 ¶¶ 135–36.  This scattershot approach to pleading undermines the viability of the claim.  The Court is left to guess as to roughly when each supposed retaliatory act occurred and thus must equally guess as to whether it pre- or post-dated Blumberg's availment of any protections under the ADA or Rehabilitation acts.    Equally problematic, Blumberg does nothing to identify what "accommodations" he sought that were denied, or what "complaints" he filed through counsel.

The Court, again, is left to guess even when Blumberg's counsel became involved at all. When viewing these vague conclusory events most favorably to Blumberg, nothing gives rise to any retaliatory animus on the University's part. Thus, the claim is dismissed.

### C.     Religious Discrimination (Count IV)

The University first contends that the religious discrimination claim cannot proceed because Defendants acting in their official capacities are immune from suit under the Eleventh Amendment to the United States Constitution, at least as to any monetary damages claimed. ECF No. 19-1 at 27 (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). Blumberg, for his part, does not dispute this, but rather contends that the Eleventh Amendment does not shield the University from suit for injunctive relief under the *Ex Parte Young* doctrine. ECF No. 20-1 at 19 (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)). But the Complaint asks for no more or different injunctive relief than that which the Court separately resolved at an earlier hearing. Thus, it appears that the requested *injunctive* relief related to this Count has been mooted.

Alternatively, even if some sliver of injunctive relief remains, no facts make the religious discrimination claim plausible. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Clause essentially "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). A plaintiff, therefore, must aver some facts to show "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Id.* If this showing is made, then the Court must

determine whether the differential treatment "can be justified under the requisite level of scrutiny." *Id.*

The Complaint does little more than aver Blumberg's Jewish faith and that certain events regarding his OSC matter fell near high holidays. But no facts make plausible that any University officials treated Blumberg *differently* on account of his faith, or if they did, such treatment stemmed from intentional or purposeful discrimination. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977). *Cf. Brennan v. Deluxe Corp.*, 361 F. Supp 3d 494, 505–06 (in Title VII discrimination context claim fails unless reasonable inference of intentional religious discriminatory animus). The claim wholly fails. It is, therefore, dismissed.

### D.  Lack of Due Process (Count VI)

The Court lastly turns to Blumberg's due process claim. Although the claim is not pleaded clearly, Blumberg seems to attack the legitimacy of the OSC process as applied to him. He avers that Defendants violated his right to due process by "harassing him into accepting a pre-ordained punishment"; failing to conduct an adequate investigation before [the University] forced him to accept OSC's charges"; and failing to comply with the CAI procedures. ECF No. 1 ¶ 141.

For the claim to survive dismissal, some facts must make plausible that Blumberg maintained a particular "constitutionally cognizable life, liberty, or property interest" that the University took from him through constitutionally inadequate procedures. *Doe v. Virginia Polytechnic Inst. & State Univ.*, 77 F.4th 231, 236 (4th Cir. 2023). Of course, the touchstone of due process is "notice and an opportunity to be heard." *Id.* Accordingly, to satisfy due process, a student facing discipline should minimally receive "notice 'contain[ing] a statement of the specific charges and grounds which, if proven, would justify [disciplinary action].'" *Id.* (quoting *Dixon v. Alabama State Bd. of Educ.*, 294 F.2d 150, 159 (5th Cir. 1961)) (alterations in original).

When viewing the Complaint most favorably to Blumberg, nothing supports his asserted denial of due process. Indeed, the CAI, integral to the Complaint, lays out a robust notice and hearing process. *See* ECF No. 1 ¶¶ 4, 80, 141; ECF No. 2-4. A student accused of misconduct not only receives ample notice but also an opportunity to participate in OSC's pre-investigation, as Blumberg did here. ECF No. 2-4 at 9–11. If the OSC complaint is not resolved informally, then the student is entitled to a hearing with notice and an opportunity to be heard. *Id.* at 10–13. No doubt, OSC afforded Blumberg those procedural protections. That he disagrees with the outcome does not, by itself, make the claim plausible. Nor can his empty characterizations of OSC's actions as "harassing" or otherwise "lacking" save the claim because the averred *facts* demonstrate otherwise. *See generally* ECF No. 1 through ECF No. 1-19. Accordingly, the claim fails and must be dismissed.

## IV.    Dismissal with or without prejudice

The Court retains broad discretion in whether to dismiss the Complaint with or without prejudice. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) (citing *180S, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009)); *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985). *Cosner v. Dodt*, 526 F. App'x 252, 253 (4th Cir. 2013). However, if amendment to the pleadings would be futile, dismissal with prejudice is warranted. *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (finding district court did not abuse discretion in dismissing complaint with prejudice where "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"); *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), *abrogated on different grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020) ("Once a court has determined that the complaint is truly unamendable, a dismissal without prejudice is of little benefit to the litigant, as the claim cannot

be made viable through reformulation."). Blumberg has not sought leave to amend, which suggests he should be afforded that opportunity. Nonetheless, the Court conducted an evidentiary hearing on Blumberg's injunctive relief claim that generated a robust documentary record and sworn testimony from OSC Director Bond. [7] This evidence, in short, undermined the sufficiency of the claims and counsels in favor of dismissal with prejudice. That said, the Court will err on the side of caution and dismiss the claims without prejudice. Should Blumberg wish to pursue claims arising from the University's disciplinary matter, he must file a new complaint.

A separate Order follows.

March 5, 2026
Date

_____/s/_____
PAULA XINIS
United States District Judge

---

[7] The Court also received sworn declarations from Dr. Zhao, Cahill, Valdez, and other evidence which undercut all of Blumberg's claims. ECF Nos. 12, 12-2. 12-3, 12-4, 12-7. The Court additionally learned that Blumberg willfully absented himself from the Disciplinary Board hearing, which proceeded without him and concluded after a hearing that Blumberg violated the cheating provision of the ACI and imposed as a sanction a final grade of F in the class. *See* ECF Nos. 25 & 26 (hearing Jul. 18, 2025).